## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF IOWA

In re:

**Craig Raymond Lewis,**                                            **Case No.  15-02519-als7**
**Mary Ann Lewis,**

          Debtor(s)

**American National Bank,**                                         **Adv. Pro. 16-30011-als**

          Plaintiff

      v.

**Craig Raymond Lewis,**
**Mary Ann Lewis,**

          Defendant.

## MEMORANDUM OF DECISION
### (date entered on docket: May 24, 2017)

Before the Court is American National Bank's ("ANB") complaint which seeks to except its debt from discharge and denial of the Debtors' general discharge.  The Court has jurisdiction of this matter under 28 U.S.C. § 1334, 11 U.S.C. § 522, and Fed. R. Bankr. P. 4003.

### FACTS

On December 9, 2015 Craig and Mary Lewis ("Debtors") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.  ANB was listed as a creditor on Schedule F with an unsecured claim in the amount of $84,966.12.  On March 18, 2016 ANB filed a timely Complaint objecting to discharge pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6) and for denial of discharge under 11 U.S.C. §§ 727(a)(2)(A), 727(a)(4)(A), 727(a)(4)(B), and 727(a)(7).

The facts in this case are largely undisputed.  In March 2002, Mary Lewis ("Mary") established a $1,000 "Ready Reserve" unsecured line of credit which was attached to the Debtors' joint checking account at People's National Bank, which is now ANB.  On September 23, 2013 Mary met with a

personal banker to close that account and open a new demand deposit account (DDA) because her purse containing her ATM card and checkbook had been lost or stolen.  Mary acknowledges that she executed forms and received the appropriate disclosures from ANB at that appointment.  Mary also acknowledges that she understood that the demand deposit loan (DDL), or line of credit, was going to be attached to the new DDA in the amount of $1,000 plus $10.91 in accrued interest.  Mary provided the signature card and paperwork to Craig so he would be listed as a joint account holder and could obtain a debit card.  He returned these documents to a branch location of ANB sometime after September 23, 2013 and received an ATM card.

The checking account routinely received a direct deposit from Craig's employer and other funds were deposited into the account from the couple's cleaning business.  From these amounts personal and household expenses were paid.  In October 2013 ANB mailed a bank statement that indicated the amount of the line of credit was $101,091.  Unbeknownst to ANB, when the balance under the prior line of credit was entered into the system the software program did not recognize the decimal point and increased the available balance by ten-fold.  This increase was not requested by Mary or Craig and was never approved by ANB under its normal procedures.

From the time Mary became aware that the line of credit had increased she made multiple transfers from that source to her checking account which totaled $62,340 over a period of 15 months.  She stated that the majority of the transfers were withdrawn for gambling.  During this same time period, Craig used the account as he had in the past for ordinary day to day purchases, but was unaware that the original credit limit had been increased.  Mary handled the family's finances and paid the bills, he deferred to her supervision of the accounts, never reviewed a bank statement and did not access information through online banking.  At some point in time, Mary told her husband about the large balance that was owed and confessed she had used the funds for gambling. Upon learning this information Craig did not contact ANB.  In December 2014 the Debtors opened a new checking account at a different bank.[1]  It was not until August 2015 that ANB discovered the error involving the DDL amount and discontinued the ability to access the line of credit.  A few months later ANB contacted the Debtors to set up a payment plan which did not materialize.  On December 9, 2015 Craig and Mary filed a voluntary chapter 7 bankruptcy.

---

[1] No further funds were accessed under the line of credit after December 2014.  The outstanding balance continued to grow because the DDL was used to make payment on the amount owing through transfers through the DDA.

DISCUSSION

Dischargeability actions are narrowly construed against the creditor and in favor of the debtor. *See Lipka v. Donley (In re Donley),* 115 B.R. 502, 503 (Bankr. E.D. Pa. 1990) (citing *Koltman v. Hammill* (*In re Hammill*), 61 B.R. 555 (Bankr. E.D. Pa. 1986)).   Denial of a debtor's discharge defeats an essential purpose of bankruptcy relief, the concept of a fresh start.  *See Korte v. United States* (*In re Korte*), 262 B.R. 464, 471 (B.A.P. 8th Cir. 2001).   The statutory provisions found at 11 U.S.C. § 727 are liberally construed in favor of the debtor while also insuring the bankruptcy process is not abused. *Strauss v. Brown* (*In re Brown*), 531 B.R. 236, 256 (Bankr. W.D. Mo. 2015).   To be successful on its complaint, ANB bears the burden of proof by a preponderance of the evidence for each of the statutory elements.   *Grogan v. Garner,* 498 U.S. 279(1991).   It is under these principles that each of the remaining counts of the complaint is examined.[2]

1.      11 U.S.C. § 523(a)(2)(A)

ANB seeks to have its debt excepted from Debtors' discharge pursuant to 11 U.S.C. § 523(a)(2)(A) which provides that:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by – false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

The evidence is clear that money or an extension of credit was obtained from ANB when Mary accessed the line of credit.   In the Eighth Circuit the same five factors are applied to determine whether a debt is nondischargeable under "false pretenses," "fraud" and "false representation."   To succeed in excepting its debt from discharge under §523(a)(2)(A), a plaintiff must prove the following five elements by a preponderance of the evidence:

> (1) The debtor made a representation; (2) The debtor knew the representation was false at the time it was made; (3) The representation was deliberately made for the purpose of deceiving the creditor; (4) The creditor reasonably relied on the representation; and (5) The creditor sustained the alleged loss as the proximate result of the representation having been made.

*R&R Ready Mix v. Freier (In re Freier),* 604 F.3d 583, 587 (8th Cir. 2010).

---

[2] At the conclusion of the trial conducted on February 9, 2017 the Court announced that the Plaintiff did not bear its burden of proof under 11 U.S.C. §§ 727(a)(4) and 727(a)(7) and these counts were dismissed with prejudice.

Cases involving facts similar to this case involving unapproved and unauthorized use of credit have reached differing results.  In *Old Reupblic Natl. Title Ins. Co. v. Levasseur (In re Levassuer)* 737 F.3d 814 (1st Cir. 2013) and *Merchants Natl. Bank v. Moen (In re Moen)*, 238 B.R. 785 (B.A.P. 8th Cir. 1999) the Courts ruled that debts arising from accessing home equity lines of credit were excepted from discharge.  However, in  *Smart  Financial Credit Union v. Williams*, 466 B.R. 95 (Bankr. S.D. Texas 2011) the debt owed from debtor's use of a line of credit which was available due to an error in software was not excepted from discharge.

> The concept of false pretenses is especially broad. It includes any intentional fraud or deceit practiced by whatever method in whatever manner. False pretenses may be implied from conduct or may consist of concealment or non-disclosure where there is a duty to speak, and may consist of any acts intended to deceive.
>
> . . . Silence or concealment as to a material fact can constitute false pretenses. In short, false pretenses can be made in any of the ways in which ideas can be communicated.

*Treadwell v. Lodge (In re Treadwell),* 459 B.R. 394, 405-06 (Bankr. W.D. Mo. 2011) (citations omitted).  Similarly, in *United States v. Hampton*, the court stated that "misrepresentation denotes not only written or spoken words but also any other conduct that amounts to an assertion not in accordance with the truth."  396 B.R. 28, 30 (Bankr. N.D. Iowa 2008).  The court explained false pretenses as "a series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or false and misleading understanding of a transaction, in which a creditor is wrongfully induced by the debtor to transfer property or extend credit to the debtor." *Id.* The court went on to apply the five factors listed above using the debtor's silence regarding a material fact as the misrepresentation.  *Id*. at 30-31.  In addition to the account agreement which required disclosure of errors to ANB, common law also recognizes a duty to inform.  "[W]hen the circumstances imply a particular set of facts, and one party knows the facts to be otherwise, that party may have a duty to correct what would otherwise be a false impression.  This is the basis of the 'false pretenses' provision of Section 523(a)(2)(A)."  *Merchants Natl. Bank v. Moen*, 238 B.R. at 791 (citations omitted).

The Debtors argue that they lacked the intent necessary to misrepresent the amount of money accessible to them by the line of credit. In accordance with the 8th Circuit Court of Appeals ruling in *In re Van Horne*, "because direct proof of intent (i.e., the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be

inferred." *In re Van Horne*, 823 F.2d 1285, 1287 (8th Cir. Iowa 1987) (abrogated on other grounds by *Grogan v. Garner*, 498 U.S. 279 (1991)). The facts demonstrate that Mary had knowledge of the inaccuracy and yet continued to exploit this error to her benefit. Mary testified that she did not review the paper bank statements that were sent to her in October 23, 2013. Rather she routinely relied upon online access for her account information. There were six advances and a cash transfer made from the line of credit during the time period of October 8, 2014 through October 21, 2014. All of these transactions pre-date the October 23, 2014 bank statement. Clearly Mary was aware of the increased line of credit well before the first bank statement on the new account was sent by ANB. Notably, based upon her online access activity there are numerous inquiries on both the old and new checking account during this same time period. She states that her online activity was routine and benign. But she does not deny that she discovered ANB's error on the line of credit through her online review of the account. Mary's testimony is clear that she realized that the line of credit had been increased and she spent more than usual because the funds were available. She apparently operated under the presumption that ANB would eventually discover the error. Specifically, Mary testified: "Quite honestly I thought if I used it and it was a mistake, they were going to let me know real fast. So once I used it, I never had a second thought." This explanation does not excuse her use of the line of credit and is not dispositive of whether she engaged in fraudulent conduct. *Merchants Natl. Bank v. Moen*, 238 B.R. at 792.

To explain her actions, Mary stated that she had received increases to her credit card spending limits without notification from the credit card companies. While this may be true, these two situations are neither comparable nor relevant to her conduct in accessing the line of credit. Although Mary may not be financially sophisticated, she earned a high school diploma and handled all of the family finances during her 30 year marriage. While her background and experience is relevant to the Court's analysis, the evidence is clear that Mary understood that the line of credit that was being transferred to the new account was in the amount of $1,010.91. In spite of this knowledge she took affirmative action to access the line of credit far above the amount of credit that had been extended by ANB. Mary explains that she did intend to repay the debt owing to ANB by finding gainful employment or from gambling winnings. Neither of these options became a reality and are inadequate defenses to her actions. *See AT&T Universal Card Services v. Mercer (In re Mercer)*, 246 F.3d 391, 409-10 (5th Cir. 2001) ("*hoping . . . is not* synonymous with *intending* to pay.").

The reasonableness of creditor reliance has been articulated in the following way:

> "The reasonableness of a creditor's reliance . . . should be judged in light of the totality of the circumstances." Among other things, a court may consider "whether there were any 'red flags' that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and whether even minimal investigation would have revealed the inaccuracy of the debtor's representations."

*Sinclair Oil Corp. v. Jones (In re Jones)*, 31 F.3d 659, 662 (8th Cir. 1994) (citing *Coston v. Bank of Malvern (In re Coston)*, 991 F.2d 257, 261 (5th Cir. 1993)). ANB granted credit under the DDL in the amount of $1,010.91; it relied upon the fact that the credit grant was limited to that amount; that it would not be exceeded under the terms of the parties' agreement; and that no funds would be available under the DDL attached to the new DDA account. There are systems in place to provide alerts when customers withdraw sums of money outside the approved limits of their credit lines. The bank statements reflect that there were numerous overdraft charges assessed to the Debtors' joint checking account prior to the accidental inflation of their available credit limit. ANB would not have dispersed further funds to the Debtors under the DDL if it had not been for their reliance on the Debtors' claims and entitlement to the funds.

ANB has failed to establish all of the requisite elements as to Craig Lewis. "The intent element of § 523(a)(2)(A) does not require a finding of malevolence or personal ill-will; all it requires is a showing of an intent to induce the creditor to rely and act on the misrepresentations in question." *Moen*, 238 B.R. at 791 (quoting *Moodie–Yannotti v. Swan (In re Swan)*, 156 B.R. 618, 623 n. 6 (Bankr. D. Minn. 1993)). Nothing in the record establishes a misrepresentation by Craig to ANB. There are no clear facts indicating that he accessed the line of credit or continued using the joint account once he became aware of the situation. Any silence on his part was based upon a lack of knowledge, not with the intent to mislead ANB. Craig's conduct constituted a breach of contract which, absent a showing of fraud, is not sufficient to except the amount owing to ANB from his discharge. *Alpine Village Retirement Center v. Cunningham* (*In re Cunningham*)*,* Bankr. No. BK09-43626-TLS, Adv. No. A10-04013-TLS, 2010 WL 3282624 (Bankr. D. Neb. Aug. 19, 2010).

Based upon the foregoing facts ANB has met its burden as to each element of nondischargeability under 11 U.S.C. § 523(a)(2)(A) as to Mary Lewis. For this reason the balance owing to ANB in the amount of $84,966.12 is excepted from her discharge. The cause of action against Craig Lewis pursuant to 11 U.S.C. § 523(a)(2)(A) is dismissed.

2.      11 U.SC. § 523(a)(6)

ANB alleges that the Debtors' conduct was willful and malicious which precludes the discharge of its debt.  The provisions of 11 U.S.C. § 523(a)(6) state that a Chapter 7 discharge does not discharge a debtor from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." Under this section the elements of willfulness and malice are analyzed separately. *Barclays American/Business Credit v. Long*, 774 F.2d 875, 880 (8th Cir. 1985). The Eighth Circuit has defined willful as "headstrong and knowing" conduct. *Johnson v. Miera (In re Miera)*, 926 F.2d 741, 743-44 (8th Cir. 1991).  "The section's word 'willful' modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely, . . .  a deliberate or intentional act that leads to injury..." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

Under the facts, Mary did withdraw money from ANB above and beyond the couple's available credit limit. This Court does not find, however, that there was an intention to injure ANB that was present at the times the account was accessed.  Because Mary believed that she would be able to pay back the amount owing, albeit with gambling winnings or gainful employment, that had not yet been accomplished, the series of events simply reflect an intentional act that leads to an injury which is insufficient proof under the statute.

As to the second element of § 523(a)(6), the Eighth Circuit has defined "malicious" as conduct "targeted at the creditor . . . at least in the sense that the conduct is certain or almost certain to cause...harm." *Johnson v. Miera*, 926 F.2d 741 at 743-44 (citing *In re Long*, 774 F.2d 875, 880-81 (8th Cir. 1985)). The act must be done with the actual intent to cause injury to the creditor. *Kawaauhau v. Geiger*, 523 U.S. at 61 64.  The Debtors' actions fall short of this standard as well. Under the facts of this case, it can be found that it was Mary's intent to personally gain from using the inflated line of credit. While the harm to ANB was a proximate cause of the Debtors' gain, it was not the intent of the Debtors in this matter to target and harm ANB.

Under these facts, the Debtors' actions were neither willful nor malicious and therefore the debt does not qualify as an exception to discharge under 11 U.S.C. § 523(a)(6).  This cause of action is dismissed.

3.      11 U.S.C. § 727(a)(2)

To prove fraudulent concealment of property under § 727(a)(2), ANB must prove the following elements: (1) the act complained of was done within one year prior to the petition date; (2) the act was that of the debtor; (3) it consisted of a transfer, removal, destruction or concealment of the debtor's

property; and (4) it was done with an intent to hinder, delay, or defraud either a creditor or an officer of the estate. *Du Trac Cmty. Credit Union v. Hefel* (*In re Hefel*), Bankr. No. 10-02787, Adv. No. 12-09016, 2013 WL 4010304, *4 (Bankr. N.D. Iowa Jan. 7, 2013) (citing *Georgen v. Grimlie* (*In re Grimlie*), 439 B.R. 710, 716 (B.A.P. 8th Cir. 2010)); *see also First Am. Bank v. Andrews* (*In re Andrews*), 540 B.R. 379, 383 (Bankr. S.D. Iowa 2015).

There are insufficient facts on the record to establish all of the required statutory elements. ANB failed to meet the burden of proof necessary to deny the Debtors discharge under this section and for that reason this count is dismissed.

IT IS HEREBY ORDERED

1.      The debt owed by Mary Lewis to ANB in the amount of $84,966.12 is excepted from her discharge pursuant to 11 U.S.C. § 523(a)(2)(A);

2.      The cause of action against Craig Lewis pursuant to 11 U.S.C. § 523(a)(2)(A) is dismissed;

3.      The cause of action under 11 U.S.C. § 523(a)(6) is dismissed;

4.      The cause of action under 11 U.S.C. § 727(a)(2) is dismissed;

5.      The parties shall bear their own costs; and

6.      Judgment shall enter accordingly.

/s/ Anita L. Shodeen
Anita L. Shodeen
U.S. Bankruptcy Judge

Parties receiving this Memorandum of Decision from the Clerk of Court:
Electronic Filers in this Adversary Proceeding